UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-62779-SNOW

KENNIE LEE CHAPPEL, JR.,

       Plaintiff,

vs.

BOSS RAIN FOREST PET RESORT, INC.
D/B/A BOSS THE PET CONNECTION,
ENRIQUE FERNANDEZ,
PATRICIA FERNANDEZ,

       Defendants.

_____/

## DEFENDANTS' POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants, BOSS RAIN FOREST PET RESORT, INC., D/B/A BOSS THE PET CONNECTION ("Boss"), ENRIQUE FERNANDEZ ("E. Fernandez"), and PATRICIA FERNANDEZ ("P. Fernandez")(collectively "Defendants"), by and through their undersigned counsel, hereby submit their post-trial Findings of Fact and Conclusion of Law, in accordance with the Court's instructions on February 6, 2018 at the conclusion of trial, as reflected in the Court Minutes [DE 93].

## I.     INTRODUCTION

### A.  Background

This case involves disputes about Plaintiff's employment under the Fair Labor Standards Act ("FLSA"), including Plaintiff's claims for unpaid overtime, retaliation, and late payment of wages.

Plaintiff alleged that he was a store clerk and pet groomer at Defendants' pet grooming business which offered pet products and services such as pet grooming [DE 24 at ¶7 and ¶10].

1

Plaintiff alleged that Defendants E. Fernandez and P. Fernandez were Plaintiff's "employer" under the FLSA pursuant to 29 U.S.C. §203(d) since he contended that both E. Fernandez and P. Fernandez controlled Plaintiff's pay, controlled Plaintiff's duties, controlled Plaintiff's schedule, and supervised Plaintiff.  [DE 24 at ¶¶8-17].

## B.  Procedural History

Plaintiff filed an amended complaint [DE 24] against Defendants Boss, E. Fernandez and P. Fernandez as follows:

- Count I by Plaintiff against Defendants Boss, E. Fernandez and P. Fernandez alleging unpaid overtime; and

- Count II by Plaintiff against Defendants Boss, E. Fernandez and P. Fernandez alleging violation of the anti-retaliation provisions of the FLSA.

Although not plead in a separate count of Plaintiff's Amended Complaint, Plaintiff's Statement of Claim [DE 24-1] alleges that he was paid late.

Defendants filed an amended answer and affirmative defenses to Plaintiff's amended complaint [DE51].

## II.    FINDINGS OF FACT

**The Parties**

Plaintiff Kennie Lee Chappel, Jr. ("Chappel" or "Plaintiff"), initially started working at Boss in 2005 on a part-time basis at Boss' store located at 2063 N. University Drive, Sunrise, FL 33322 (referred to as the "Sunrise Store") while Plaintiff was still at high school.  **See Plaintiff's Exhibit 26/DE 97-5; See E. Fernandez Tst. at Trial.**

Defendant Boss presently has three (3) store locations where it primarily offers pet grooming and pet boarding services, and where it also sells pet products to its retail customers. **See E. Fernandez Tst. at Trial.**

Those three locations are located at: 2063 N. University Drive, Sunrise, FL 33322 (referred to as the "Sunrise Store"), 11316 Wiles Road, Coral Springs, FL 33076 (referred to as the "Wiles Store"), and 7439 West Sample Road, Coral Springs, FL 33065 (referred to as the "Sample Store"). **See E. Fernandez Tst. at Trial; see Plaintiff's Trial Exhibit 50/DE 97-17].**

Before 2016, the Sample Store operated under the name of Boss Pet Investment, Corp, a different legal entity to Defendant Boss Rain Forest Pet Resort, Inc. **See E. Fernandez Tst. at Trial.**

Defendant E. Fernandez is the founder and principal of Defendant Boss and testified that he believes he owns approximately 98-99% of the shares of stock of Defendant Boss. **See E. Fernandez Tst. at Trial.**

Defendant P. Fernandez is Defendant E. Fernandez's wife and she worked for Boss as a pet groomer. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

**History of Plaintiff's work at Boss**

Defendant Boss, acting through its principal, E. Fernandez, initially hired Plaintiff to be a part-time pet bather and dog walker, and to train him to become a dog groomer. **See E. Fernandez Tst. at Trial.**

Boss initially paid Plaintiff $8.50 per hour, consistent with the hourly rate it paid new entry-level employees with no prior experience in the pet care industry. **See E. Fernandez Tst. at Trial.**

Defendant E. Fernandez soon determined that Plaintiff did not have the attention to detail required to be a good pet groomer but that since he could speak English fluently, he would be suitable to work at the front desk and to work directly with customers.  **See E. Fernandez Tst. at Trial.**

Plaintiff thereafter worked primarily at the front desk serving customers.  **See E. Fernandez Tst. at Trial.**

Plaintiff worked at Boss until approximately 2008 when he got into trouble with the law. **See E. Fernandez Tst. at Trial.**

In approximately 2010, Plaintiff contacted E. Fernandez and asked to resume working at Boss.  **See E. Fernandez Tst. at Trial.**

Plaintiff thereafter worked at Boss from approximately 2010 until November 22, 2016. **See E. Fernandez Tst. at Trial.**

Defendant E. Fernandez promoted Plaintiff to store manager of the Sunrise Store. **See. E. Fernandez Tst. at Trial.**

While Plaintiff worked at Boss, Boss's principal, E. Fernandez increased Plaintiff's hourly wage by approximately $2 per year.  **See E. Fernandez Tst. at Trial.**

Plaintiff's hourly wage increased to approximately $20 per hour by the end of 2015, before Defendant E. Fernandez reduced it in early 2016 to $16 per hour for performance related reasons. **See E. Fernandez Tst. at Trial.**

Plaintiff's average hourly wage of $16-20 was significantly higher than the hourly wages which Defendant Boss paid its groomers or store clerks.  **See. E. Fernandez Tst. at Trial.**

Plaintiff and Defendant E. Fernandez communicated with one another via text message in which Defendant E. Fernandez referred to Plaintiff as being a "manager". **See Plaintiff's Exhibit 49/DE 97-16 at pg. 79 of 152.**

On Plaintiff's Facebook page, he listed his job title as "Manager at Boss The Pet Connection". **See Defendants' Exhibit 58/DE 99-17.**

Defendant E. Fernandez also communicated with Plaintiff via text message to address resolving a customer's complaint, since Plaintiff was one of Boss' managers. **See Plaintiff's Exhibit 49/DE 97-16 at pg. 26 of 152.**

One of Plaintiff's responsibilities as a manager was, on Mondays, to print off the prior week's times for employees at the location where he was working on Mondays and to fax that information to the payroll company. **See E. Fernandez Tst. at Trial.**

Accordingly, Plaintiff and Defendant E. Fernandez sent text messages to one another about whether Plaintiff had printed off employees' time for the prior week and whether Plaintiff had faxed it to the payroll company. **See Plaintiff's Exhibit 49/DE 97-16 at pg. 29 of 152.**

**Plaintiff's "employer" under the FLSA**

Plaintiff was employed, and paid, by Defendant Boss. **See Plaintiff's Exhibit 30/DE 97-7; Plaintiff's Exhibit 33/DE 97-8.**

Defendant E. Fernandez controlled Plaintiff's pay, duties, schedule, and supervised Plaintiff. **See E. Fernandez Tst. at Trial.**

Defendant P. Fernandez has a limited command of the English language and testified at trial through a Spanish-English interpreter. **See P. Fernandez Tst. at Trial; See DE 93 (noting use of Spanish translator for P. Fernandez).**

Plaintiff does not speak Spanish. **See Chappel Tst. at Trial.**

P. Fernandez worked primarily as a groomer at the back of the store in the pet grooming room, whereas Plaintiff worked primarily at the front desk assisting customers. **See P. Fernandez Tst. at Trial; see E. Fernandez Tst. at Trial.**

Defendant P. Fernandez did not control Plaintiff's pay. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

Defendant P. Fernandez did not control Plaintiff's duties. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

Defendant P. Fernandez did not supervise Plaintiff. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

When Plaintiff and Defendant P. Fernandez were working in the same location, Plaintiff would tell Defendant P. Fernandez how customers wanted her to groom their dog. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

Defendant P. Fernandez did not control Plaintiff's schedule. **See E. Fernandez Tst. at Trial; see P. Fernandez Tst. at Trial.**

**Plaintiff's Work Schedule**

Plaintiff was manager of the Sunrise store and primarily worked at that store since it was the closest store to his house. **See E. Fernandez Tst. at Trial.**

The scheduled store hours for the Sunrise Store from 2013-2016 was from 7:30am-5:00pm. **See E. Fernandez Tst. at Trial.**

Th scheduled store hours for the Wiles Store and for the Sample Store was from 8:30-5:00pm. **See E. Fernandez Tst. at Trial.**

Plaintiff's work schedule was Mondays, and Wednesdays-Saturdays from 7:30am to 3:30pm from 2013-2016.  **See E. Fernandez Tst. at Trial.**

Plaintiff's scheduled day off was on Tuesdays and Boss' stores were closed on Sundays from 2013-2016.  **See E. Fernandez Tst. at Trial.**

Plaintiff would typically open the Sunrise Store at 7:30am.  **See E. Fernandez Tst. at Trial.**

Defendant E. Fernandez's mother, Susana Verastegui ("Verastegui") would come into the Sunrise store after Plaintiff and would take over from Plaintiff by 3:30pm.  **See E. Fernandez Tst. at Trial; See Verastegui Tst. at Trial.**

Verastegui would often see Plaintiff change into his work clothes while he was at Defendant Boss' premises to go to work at his second job at You Fit gym which was located in the same plaza as Boss' Sunrise store.  **See Verastegui Tst. at Trial.**

Plaintiff was often in a hurry to leave Boss' premises to work at his second job at You Fit. **See E. Fernandez Tst. at Trial; See Verastegui Tst. at Trial.**

Plaintiff sometimes closed the Sunrise store before 3:30pm if business were slow and if there were no dogs scheduled to be groomed before the regular 5:00pm closing time.  **See E. Fernandez Tst. at Trial.**

**Lunch Breaks**

Plaintiff took a one (1) hour lunch break per workday.  **See E. Fernandez Tst. at Trial; See Verastegui Tst. at Trial.**

Defendant Boss paid Plaintiff for his one (1) hour lunch break.  **See E. Fernandez Tst. at Trial; See Verastegui Tst. at Trial.**

Plaintiff did not log out and log in while he was on his lunch break.  **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 29/DE 97-6.**

**Plaintiff's 2nd Jobs**

Plaintiff had two (2) second jobs during 2013-2016 while he worked at Boss.  **See. Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 1-2 of 123 (Plaintiff's Answer to Interrogatory #2).**

One of Plaintiff's second jobs was at YouFit Health Club.  **See. Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 1-2 of 123 (Plaintiff's Answer to Interrogatory #2).**

Plaintiff's other second job was doing security work from 11pm-3am on Thursdays, Fridays, and Saturdays between September 2016 and the end of Plaintiff's employment with Defendant Boss in November 2016.  **See Defendants' Exhibit 42/DE 99-18 at pg. 1-2 and 45 of 123 (Plaintiff's Answer to Interrogatory #2 and #19).**

**Plaintiff's Hours Worked**

Plaintiff logged in and logged out his time using the 123 Pets program.  **See E. Fernandez Tst. at Trial.**

The time employees log in and logged out is automatically tracked on the 123 Pets program. **See E. Fernandez Tst. at Trial.**

The time Plaintiff worked is reflect in the time clock reports.  **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 29/DE 97-6.**

Defendant E. Fernandez and Defendant Boss' store managers, including Plaintiff, would adjust the total daily time worked in the 'comment' field of the time clock report before submitting

8

the adjusted time clock reports to the payroll company for processing. **See E. Fernandez Tst. at Trial.**

Defendant Boss used Ace payroll until December 2015. **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 2/DE 97-2.**

Defendant Boss then used ADP payroll starting January 2016. **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 30/DE 97-7.**

The payroll company paid employees their wages based on the adjusted time clock reports submitted to it. **See E. Fernandez Tst. at Trial.**

The time clock reports accurately reflect the hours that Plaintiff logged in and logged out on a given workday, although for a few workdays Defendant E. Fernandez manually wrote in notations in the 'comment' field to adjust Plaintiff's time. **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 47/DE 97-15.**

Even on the occasional days where Defendant E. Fernandez manually wrote in the 'comment' field to adjust Plaintiff's time, Defendant E. Fernandez rarely adjusted Plaintiff's daily time and instead manually made the notation about the poor quality of Plaintiff's work to motivate Plaintiff to do better in the future. **See E. Fernandez Tst. at Trial.**


**Hours for September 19, 2016 work day**

On September 19, 2016 Defendant Boss' time clock reports shows Plaintiff with a 'Time In' at 7:31am and a 'Time Out' at 3:47pm, with 8.27 hours in the 'Total' field and 8 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 12 of 21.**

Plaintiff's screenshot also shows Plaintiff with a 'Time In' at 7:31am and a 'Time Out' at 3:47pm, with 8.27 hours in the 'Total' field and 8 hours in the 'Comment' field with the additional

notation in the 'Comment' field "-4h no kennel, no phone fix bad laundry". **See Plaintiff's Exhibit 47/DE 97-15 at pg. 12 of 115.**

Defendant Boss did not deduct 4 hours' time from Plaintiff's workday on September 19, 2016, contrary to the notation in the "Comment" field on the Plaintiff's screenshot. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 12 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 12 of 115.**

**Hours for June 20, 2016 work day**

On June 20, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:30am and a "Time Out" at 3:03pm, with 7.55 hours in the 'Total' field and 7.5 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 10 of 21.**

Plaintiff's screenshot on June 20, 2016 also shows Plaintiff with a 'Time In' at 7:30am and a 'Time Out' at 3:03pm, with 7.55 hours in the 'Total' field and 7.5 hours in the 'Comment' field with the additional notation in the 'Comment' field "-1h no close register 6.5". **See Plaintiff's Exhibit 47/DE 97-15 at pg. 19 of 115.**

Defendant Boss did not deduct 1 hour of time from Plaintiff's workday on June 20, 2016, contrary to the notation in the "Comment" filed on the Plaintiff's screenshot. **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 10 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 19 of 115.**

**Hours for June 15, 2016 work day**

On June 15, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:27am and a "Time Out" at 1:56pm, with 6.48 hours in the 'Total' field and 6.5 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 10 of 21.**

Plaintiff's screenshot on June 15, 2016 also shows Plaintiff with a 'Time In' at 7:27am and a 'Time Out' at 1:56pm, with 6.48 hours in the 'Total' field and the notation in the 'Comment' field "-2 hour kennel bin Not reviced=4.5".  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 19 of 115.**

Defendant Boss did not deduct 2 hours of time from Plaintiff's workday on June 25, 2016, contrary to the notation in the "Comment" filed on the Plaintiff's screenshot.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 10 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 19 of 115.**

**Hours for May 18, 2016 work day**

On May 18, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:26am and a "Time Out" at 1:30pm, with 6.07 hours in the 'Total' field and 6 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 13 of 21.**

Plaintiff's screenshot on May 18, 2016 also shows Plaintiff with a 'Time In' at 7:26am and a 'Time Out' at 1:30pm, with 6.07 hours in the 'Total' field and 6 hours in the 'Comment' field with the additional notation in the 'Comment' field "-3 hour only 3 pictures=3".  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 20 of 115.**

Defendant Boss did not deduct 3 hours of time from Plaintiff's workday on May 18, 2016, contrary to the notation in the "Comment" filed on the Plaintiff's screenshot.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 13 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 20 of 115.**

**Hours for January 21, 2016 work day**

On January 21, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:20am and a "Time Out" at 2:01pm, with 6.68 hours in the 'Total' field and 6.5 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 14 of 21.**

Plaintiff's screenshot on January 21, 2016 also shows Plaintiff with a 'Time In' at 7:20am and a 'Time Out' at 2:01pm, with 6.68 hours in the 'Total' field and the 'Comment' field stated "5 minus 1 hour for not file member paper". **See Plaintiff's Exhibit 47/DE 97-15 at pg. 23 of 115.**

Defendant Boss did not deduct 1 hour of time from Plaintiff's workday on January 21, 2016, contrary to the notation in the "Comment" filed on the Plaintiff's screenshot. **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 14 of 21; see Plaintiff's Exhibit 47/97-15 at pg. 23 of 115.**

**Plaintiff was paid for more hours than he worked even on the rare occasion where his time was adjusted**

In only a handful of occasions did Defendant E. Fernandez actually adjust Plaintiff's time. **See. E. Fernandez Tst. at Trial.**

Even on those occasions, however, it did not result in unpaid wages or unpaid overtime due Plaintiff since Plaintiff was paid for his one (1) hour daily lunch time when he was not working. **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 29/DE 97-6.**

Furthermore, although Plaintiff was paid on an hourly basis, Defendant E. Fernandez, on behalf of Defendant Boss, wanted to make Plaintiff a salaried employee and thus often paid Plaintiff based on a forty (40) hour week even though he often worked fewer than forty (40) hours in a workweek. **See E. Fernandez Tst. at Trial.**

**Hours for May 26, 2016 Work Day**

On May 26, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:23am and a "Time Out" at 3:03pm, with 7.67 hours in the 'Total' field and 7.5 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 13 of 21.**

Plaintiff's screenshot on May 26, 2016 also shows Plaintiff with a 'Time In' at 7:23am and a 'Time Out' at 4:03pm, with 8.67 hours in the 'Total' field and a notation in the 'Comment' field "no call fleas no ticket 3 no pic4h=4.5".  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 20 of 115.**

Defendant Boss' time clock report for the May 23-May 29, 2016 work week, shows that Plaintiff had 34.97 hours in the 'Total' field and 34.5 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 13 of 21**.

Defendant paid Plaintiff for a forty (40) hour work week for the May 23-May 29, 2016 work week. **See Plaintiff's Exhibit 30/DE 97-7 at pg. 75 of 113.**

Defendant Boss' payroll records show that Defendant Boss overpaid Plaintiff for the May 23-29, 2016 work week since Plaintiff worked at most 34.97 hours yet Defendant Boss paid Plaintiff for 40 hours.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 13 of 21; See Plaintiff's Exhibit 30/DE 97-7 at pg. 75 of 113.**

Plaintiff's screenshots for the May 23-May 29, 2016 work week, shows that Plaintiff had 44.21 hours in the 'Total' field.  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 20 of 115.**

Defendant Boss overpaid Plaintiff for the May 23-29, 2016 work week since, even based on Plaintiff's non-credible screenshots, Plaintiff worked 44.21 hours (including the daily one (1) hour paid lunch breaks).  After deducting five (5) hours for the daily one (1) hour lunch break, Plaintiff worked less than a forty (40) hour week although Defendant Boss paid Plaintiff for a forty (40) hour workweek.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 13 of 21**; s**ee Plaintiff's Exhibit**

30/DE 97-7 at pg. 75 of 113; See Plaintiff's Exhibit 47/DE 97-15 at pg. 20 of 115; see E. Fernandez's Tst. at Trial.

**Hours for April 23, 2016 Work Day**

On April 23, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 8:30am and a "Time Out" at 3:30pm, with 7.00 hours in the 'Total' field and 7 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 13 of 21.**

Plaintiff's screenshot on April 23, 2016 also shows Plaintiff with a 'Time In' at 8:30am and a 'Time Out' at 5:30pm, with 9.00 hours in the 'Total' field. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss' time clock report for the April 18-April 24, 2016 work week, shows that Plaintiff had 34.57 hours in the 'Total' field and 34.5 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21.**

Defendant paid Plaintiff for a 38.5 hour work week for the April 18-April 24, 2016 work week. **See Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113.**

Defendant Boss' payroll records show that Defendant Boss overpaid Plaintiff for the April 18-24, 2016 work week since Plaintiff worked at most 34.57 hours yet Defendant Boss paid Plaintiff for 38.5 hours. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115; See Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113.**

Plaintiff's screenshots for the April 18-April 24, 2016 work week, shows that Plaintiff had 42.10 hours in the 'Total' field. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss overpaid Plaintiff for the April 18-April 24, 2016 work week since, even based on Plaintiff's non-credible screenshots, Plaintiff worked 42.10 hours (including the daily

one (1) hour paid lunch breaks).  After deducting five (5) hours for the daily one (1) hour lunch break, Plaintiff worked a thirty-seven point one (37.1) hour week although Defendant Boss paid Plaintiff for a thirty-eight point five (38.5) hour workweek. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21**; **see Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115; see Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113; see E. Fernandez's Tst. at Trial.**

### Hours for April 21, 2016 Work Day

On April 21, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:30am and a "Time Out" at 1:30pm, with 6.00 hours in the 'Total' field and 6 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 13 of 21.**

Plaintiff's screenshot on April 21, 2016 also shows Plaintiff with a 'Time In' at 7:30am and a 'Time Out' at 3:30pm, with 8.00 hours in the 'Total' field the comment field read "7 no tip adjust no call clients no pict.". **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss' time clock report for the April 18-April 24, 2016 work week, shows that Plaintiff had 34.57 hours in the 'Total' field and 34.5 hours in the 'Comment' field. **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21**.

Defendant paid Plaintiff for a 38.5 hour work week for the April 18-April 24, 2016 work week. **See Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113.**

Defendant Boss' payroll records show that Defendant Boss overpaid Plaintiff for the April 18-24, 2016 work week since Plaintiff worked at most 34.57 hours yet Defendant Boss paid Plaintiff for 38.5 hours. **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 9 and 13 of 21; see Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21; See Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113.**

Plaintiff's screenshots for the April 18-April 24, 2016 work week, shows that Plaintiff had 42.10 hours in the 'Total' field.  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss overpaid Plaintiff for the April 18-April 24, 2016 work week since, even based on Plaintiff's non-credible screenshots, Plaintiff worked 42.10 hours (including the daily one (1) hour paid lunch breaks).  After deducting five (5) hours for the daily one (1) hour lunch break, Plaintiff worked a thirty-seven point one (37.1) hour week although Defendant Boss paid Plaintiff for a thirty-eight point five (38.5) hour workweek.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 and 13 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115; See Plaintiff's Exhibit 30/DE 97-7 at pg. 80 of 113; see E. Fernandez's Tst. at Trial.**

**Hours for April 15, 2016 Work Day**

On April 15, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:33am and a "Time Out" at 2:47pm, with 7.23 hours in the 'Total' field and 7 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21.**

Plaintiff's screenshot on April 15, 2016 also shows Plaintiff with a 'Time In' at 7:33am and a 'Time Out' at 2:47pm, with 7.23 hours in the 'Total' field the comment field read "5 store dirty snot paper, bad groom".  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss' time clock report for the April 11-April 17, 2016 work week, shows that Plaintiff had 37.35 hours in the 'Total' field and 36.5 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21**.

Defendant paid Plaintiff for a 40 hour work week for the April 11-April 17, 2016 work week. **See Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**

Defendant Boss' payroll records show that Defendant Boss overpaid Plaintiff for the April 11-17, 2016 work week since Plaintiff worked at most 37.35 hours yet Defendant Boss paid Plaintiff for 40 hours.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21;** see **Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**

Plaintiff's screenshots for the April 11-April 17, 2016 work week, shows that Plaintiff had 41.55 hours in the 'Total' field.  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss overpaid Plaintiff for the April 11-April 17, 2016 work week since, even based on Plaintiff's non-credible screenshots, Plaintiff worked 41.55 hours (including the daily one (1) hour paid lunch breaks).  After deducting five (5) hours for the daily one (1) hour lunch break, Plaintiff worked a thirty-six point five-five (36.55) hour week although Defendant Boss paid Plaintiff for a forty (40) hour workweek.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115; see Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**

**Hours for April 14, 2016 Work Day**

On April 14, 2016 Defendant Boss' time clock report shows that Plaintiff with 'Time In' at 7:27am and a "Time Out" at 1:27pm, with 6.00 hours in the 'Total' field and 6 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21.**

Plaintiff's screenshot on April 15, 2016 shows Plaintiff with a 'Time In' at 7:27am and a 'Time Out' at 3:39pm, with 8.20 hours in the 'Total' field the comment field read "7 didnt balance total".  **See Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115.**

Defendant Boss' time clock report for the April 11-April 17, 2016 work week, shows that Plaintiff had 37.35 hours in the 'Total' field and 36.5 hours in the 'Comment' field.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21**.

Defendant paid Plaintiff for a 40 hour work week for the April 11-April 17, 2016 work week. **See Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**

Defendant Boss' payroll records show that Defendant Boss overpaid Plaintiff for the April 11-17, 2016 work week since Plaintiff worked at most 37.35 hours yet Defendant Boss paid Plaintiff for 40 hours.  **See Plaintiff's Exhibit 29/ DE 97-6 at pg. 9 of 21;** s**ee Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**

Plaintiff's screenshots for the April 11-April 17, 2016 work week, shows that Plaintiff had 41.55 hours in the 'Total' field.  **See Plaintiff's Exhibit 47/ DE 97-15 at pg. 21 of 115.**

Defendant Boss overpaid Plaintiff for the April 11-April 17, 2016 work week since, even based on Plaintiff's non-credible screenshots, Plaintiff worked 41.55 hours (including the daily one (1) hour paid lunch breaks).  After deducting five (5) hours for the daily one (1) hour lunch break, Plaintiff worked a thirty-six point five-five (36.55) hour week although Defendant Boss paid Plaintiff for a forty (40) hour workweek.  **See Plaintiff's Exhibit 29/DE 97-6 at pg. 9 of 21; see Plaintiff's Exhibit 47/DE 97-15 at pg. 21 of 115; see Plaintiff's Exhibit 30/DE 97-7 at pg. 81 of 113.**


**Plaintiff's Evidence concerning the hours he worked**

Despite Defendants' evidence to the contrary, Plaintiff testified that he worked, on average, fifty-seven (57) hours per week at Defendant Boss.  **See Chappel Tst. at Trial.**

Despite Plaintiff introducing into evidence two (2) years of text messages between Plaintiff and Defendant E. Fernandez from 2015-2016, in none of those text messages did Plaintiff complain about working overtime or about not receiving his overtime.  **See Plaintiff's Exhibit 49/DE 97-16.**

In one of those text messages, Plaintiff thanked Defendant E. Fernandez for vacation money and stated that he did not expect it.  **See. Plaintiff's Exhibit 49/DE 97-16 at pg. 45 of 152.**

Plaintiff testified that the only text message which referred to overtime concerned another employee and not Plaintiff.  **See Chappel Tst. at Trial; See Plaintiff's Exhibit 49/DE 97-16 at pg. 1 of 152.**

The court is not relying on the screenshots which Plaintiff took on his Samsung cell phone (Plaintiff's Exhibit 47/DE 97-15) for evidentiary value as to the accuracy of the hours that Plaintiff worked.  **See Tst. at Trial.**


**Plaintiff's retaliation claim**

Defendant's last day working at Defendant Boss was November 22, 2016.  **See Chappel Tst. at Trial; see E. Fernandez's Tst. at Trial.**

Plaintiff alleges that Defendant E. Fernandez terminated him on November 22, 2016 in retaliation for Plaintiff's repeated demands for payment of his unpaid overtime wages.  **See Chappel Tst. at Trial.**

Plaintiff admitted that Defendant P. Fernandez did not say "you're fired" or words to that effect.  **See Chappel Tst. at Trial.**

The only evidence presented to support Plaintiff's retaliation claims are Plaintiff's own testimony at trial.  **See Chappel Tst. at Trial.**

By contrast, text messages between Plaintiff and Defendant E. Fernandez from November 22, 2016 demonstrate that at 9:38am Defendant E. Fernandez sent a text message to Plaintiff which stated:

> I hope you. (sic) just didnt (sic) walk out on us and left patricia alone on a busy day like today!  You better think twise (sic) because if you do leave today are never coming back.  So think very good before you abandone (sic) the shop today. Patricia is alone and she is going to be busy.  Think hard.  **See Plaintiff's Exhibit 49/DE 97-16 at pg. 151-152 of 152; see Defendant E. Fernandez Tst. at Trial.**

Accordingly, the text message from Defendant E. Fernandez to Plaintiff refers to the Plaintiff walking out and abandoning the shop.  **See Plaintiff's Exhibit 49/DE 97-16 at pg. 151-152 of 152; see Defendant E. Fernandez Tst. at Trial.**

Plaintiff did not respond to Defendant E. Fernandez's 9:38am November 22, 2016 text message.  **See Chappel Tst. at Trial.**

A little over one (1) hour after sending the 9:38am text message to Plaintiff on November 22, 2016, at 10:45am on November 22, 2016 Defendant E. Fernandez sent Plaintiff another text message which stated:

> I need my keys Today specially (sic) sample one drop them because I need them for tonight.  **See Plaintiff's Exhibit 49/DE 97-16 at pg. 151-1522 of 152; see Defendant E. Fernandez Tst. Trial Transcript.**

Plaintiff did not respond to Defendant E. Fernandez's November 22, 2016 10:45am text message.  **See Chappel Tst. at Trial.**

Plaintiff returned the keys to Defendant Boss' business the following day on November 23, 2016.  **See Chappel Tst. at Trial; see Defendant E. Fernandez Tst. at Trial.**

**Plaintiff's claim for late payment of wages**

From 2013-2016 Defendant Boss used payroll companies to pay its employees payroll. **See Defendant E. Fernandez Tst. at Trial.**

Defendant Boss used Ace payroll until December 2015.  **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 2/DE 97-2.**

Defendant Boss then used ADP payroll starting January 2016.  **See E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 30/DE 97-7.**

Defendant Boss's paid its employees' wages weekly in arrears, on or before Saturdays for the preceding Monday-Saturday work week.  **See E. Fernandez Tst. at Trial.**

Plaintiff testified that he complained about not being paid on time and that Defendants did not pay him on the date indicated on the paystub or pay check.  **See Chappel Tst. at Trial.**

The only evidence to support Plaintiff's claim that Defendant Boss would "hold" his paycheck and that it did not pay him on the date indicated on the payroll statements or on the pay checks is Plaintiff's own testimony.  **See Chappel Tst. at Trial.**

By contrast, Defendant E. Fernandez testified that Plaintiff was paid on or before Saturdays for the prior workweek and that Defendants Boss did not "hold" Plaintiff's paychecks.  **See E. Fernandez Tst. at Trial.**

The documentary evidence demonstrates that Defendant Boss paid Plaintiff his paychecks on or before Saturdays for the prior Monday-Saturday work week.  **See Plaintiff's Exhibit 2/DE 97-2; Plaintiff's Exhibit 30/DE 97-7; Plaintiff's Exhibit 33/DE 97-8; and Plaintiff's Exhibit 34/DE 97-9.**

Defendant Boss' check #3534 demonstrates that Defendant Boss paid Plaintiff on December 30, 2014 for the prior workweek, which was from December 22-27, 2014. **See Plaintiff's Exhibit 34/DE 97-9 at pg. 1 of 67.**

The payroll register demonstrates that Defendant Boss paid Plaintiff on January 9, 2015 for the prior workweek, which was December 29, 2014-January 3, 2015. **See Plaintiff's Exhibit 2/DE 97-2 at pg. 4 of 13.**

The payroll register demonstrates that Defendant Boss paid Plaintiff on January 16, 2015 for the prior workweek, which was January 5-10, 2015. **See Plaintiff's Exhibit 2/DE 97-2 at pg. 4 of 13.**

## III.    CONCLUSIONS OF LAW

### Count I – Violation of Fair Labor Standards Act ("FLSA")

29 U.S. C. §207(a)(1) provides that:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Courts have interpreted 29 U.S.C. §207(a)(1) as requiring that a claim for violation of the FLSA for unpaid overtime satisfy the following two (2) elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work. *Bailey v. TitleMax of Georgia, Inc.,* 776 F.3d 797, 801 (11th Cir. 2015). An employee works overtime if he or she worked more than forty (40) hours in a given workweek. *Id.* at 800; 29 U.S.C. §207(a)(1).

<u>Individual & Enterprise Coverage under the FLSA</u>

To establish jurisdiction for an overtime claim under the FLSA, a plaintiff must also either show i) that the employee was engaged in commerce or in the production of goods for commerce (*i.e.,* individual coverage), or (ii) that the employer was engaged in commerce or in the production of goods for commerce (*i.e.,* enterprise coverage). *Williams v. Signature Pools & Spas, Inc.,* 615 F.Supp.2d, 1374, 1378 (S.D. Fla. 2009); 29 U.S.C. § 207(a)(1).

i)      <u>Individual Coverage</u>

For individual coverage to apply, courts in the Eleventh Circuit have held that the employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce ... or (ii) regularly using instrumentalities of interstate commerce in his work." *Williams*, 615 F.Supp.2d at 1382.

Working for an instrumentality of interstate commerce includes, for example, transportation or communication industry employees. *Collado v. Florida Cleanex, Inc.*, 727 F.Supp.2d 1369, 1373 (S.D. Fla. 2010(noting that "Collado [the plaintiff employee] did not work for an instrumentality of interstate commerce, but for a local cleaning company"). *Id.*

Regularly using the instrumentalities of interstate commerce includes the regular and recurrent use of interstate telephone, telegraph, mails or travel. *Id.* (noting that locally purchased cleaning products does not satisfy using the instrumentalities of interstate commerce regardless of the origin of the products.)

Plaintiff did not work for an instrumentality of interstate commerce such as the transportation or communication industry. Rather, Plaintiff worked for Defendant Boss, a local pet grooming business with 3 retail store locations in Broward County, Florida. **See E. Fernandez Tst. at Trial; see Chappel Tst. at Trial.**

Plaintiff also did not regularly use the instrumentalities of interstate commerce in his work such as regular and recurrent use of interstate telephone, telegraph, mails or travel.  Defendant Boss' three pet grooming stores were all located in Broward County, Florida, where they serviced local customers.  **See E. Fernandez Tst. at Trial.**  Plaintiff's mere use of the telephone or the Internet does not satisfy the regular use of the instrumentalities of interstate commerce.  *Attai v. Delivery Dudes, LLC*, 2016 WL 828816, 3 (S.D. Fla. March 3, 2016); *Olson v. Star Lift Inc.*, 2010 WL 11505274, 4 (S.D. Fla. April 8, 2010)(noting that a plaintiff employee's use of the telephone to call to get his next assignment does not qualify as the regular use of the instrumentalities of interstate commerce to satisfy the individual coverage).

The evidence does not show that Plaintiff falls under individual coverage under the FLSA.

ii)     <u>Enterprise Coverage</u>

Enterprise coverage exists under the FLSA where the enterprise:

(i) has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and (ii) has an annual gross volume of sales made or business done that is not less than $500,000.  29 U.S.C. §203(s)(1); *Collado*, 727 F.Supp.2d at 1374.

To satisfy the first part of the test, the plaintiff needs to allege and prove that "…on a regular and recurrent basis, at least two of Defendants' employees engaged in commerce or handled goods and materials that have been moved in commerce."  *Collado*, 727 F.Supp.2d at 1374.  An enterprise that has employees engaged in such activities on only isolated or sporadic occasions, will not meet the condition.  *Id.*

There was no evidence that Defendant, on a regularly and recurrent basis, had at least two employees who were engaged in commerce or who handled goods and materials that have been moved in commerce.  Although Plaintiff testified that Defendant sold dog beds and crates, among

24

other merchandise, the evidence is that Defendant's business primarily involved pet grooming services at its three (3) stores in Broward County, Florida, for local customers. **See E. Fernandez Tst. at Trial; see Chappel Tst. at Trial.**  *Id.* at 1375 (no evidence that defendant engaged in commerce on a regular and recurrent basis to trigger enterprise coverage where a local cleaning company, which provided only local services, makes out-of-state telephone calls and payments to two national vehicle financing companies and various on-line payments); *Torres v. Rock & River Food, Inc.*, 244 F.Supp.3d 1320, 1328 (S.D. Fla. 2016)(requiring that, for enterprise coverage under the FLSA, a plaintiff must prove that "[a] [p]laintiff must demonstrate that, on a **regular and recurrent basis**, at least two of [the] [d]efendants' employees engaged in commerce or handled goods and material that have been moved in commerce."(Emphasis added)(quoting *Williams*, 615 F.Supp.2d at 1378).

The evidence does not show that Defendant Boss, on a regular and recurrent basis, had at least two (2) employees who were engaged in commerce or who handled goods and materials that have been moved in commerce.  Accordingly, Defendant Boss does not fall under enterprise coverage for the FLSA to apply.

<u>Burden to Maintain Accurate Time Records</u>

The burden is on the employee who sues for unpaid overtime to prove that he performed work for which he was not properly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946).  However, the burden is on the employer to keep accurate time records.  *Id.* at 687.  Where the employer's records are inaccurate or inadequate and where the employee cannot offer convincing substitutes, then the employee carries his burden of proof if he proves that he has performed work for which he has been improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Id.* at 687. The burden then shifts to the employer to show evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *Id.*

Defendant Boss tracked Plaintiff's time using the computerized 123 Pets program which automatically tracked Plaintiff's time when he logged in and logged out using the software. **See E. Fernandez Tst. at Trial; Plaintiff's Exhibit 29/DE 97-6.** Plaintiff's total time worked on a daily basis was accurately logged in the 'Total' field of Plaintiff's time clock reports. The time clock reports accurately reflect the hours that Plaintiff logged in and logged out on a given workday, although for a few workdays Defendant E. Fernandez manually wrote in notations in the 'comment' field to adjust Plaintiff's time. **See E. Fernandez Tst. at Trial**

Even on the occasional days where Defendant E. Fernandez manually wrote in the 'comment' field to adjust Plaintiff's time, Defendant E. Fernandez rarely adjusted Plaintiff's daily time and instead manually made the notation about the poor quality of Plaintiff's work to motivate Plaintiff to do better in the future. **See E. Fernandez Tst. at Trial.** On the rare occasion where Plaintiff's time was actually adjusted, Plaintiff was still paid for more hours than he worked since Plaintiff was often paid based on a forty (40) hour week even though he typically worked fewer than forty (40) hours in a workweek, and since Plaintiff took a daily one (1) hour lunch break which Defendant Boss paid for. **See Plaintiff's Exhibit 29/DE 97-6; see Plaintiff's Exhibit 30/DE 97-7; see Plaintiff's Exhibit 2/DE 97-2; see Plaintiff's Exhibit 33/DE 97-8; see E. Fernandez Tst. at Trial; see Verastegui Tst. at Trial.**

Rounding Time

Rounding an employee's time is permissible under the FLSA provided that "…it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they actually worked."  29 C.F.R. §785.48(b).

Plaintiff's time worked was tracked using the 123 Pets program, which tracked the time when Plaintiff logged in, and which tracked the time when Plaintiff logged out on a given work day.  **See E. Fernandez Tst. at Trial.**  Plaintiff did not log out for lunch although he took a one (1) hour lunch break and Plaintiff was accordingly paid for his lunch break.  **See E. Fernandez Tst. at Trial; see S. Verastegui Tst. at Trial; see Plaintiff's Exhibit 29/DE 97-6.**  The total time Plaintiff worked on a daily basis was reflected in the 'Total' column on Plaintiff's timesheets which were submitted to the payroll company for payment of payroll.  **See. E. Fernandez Tst. at Trial; see Plaintiff's Exhibit 29/DE 97-6.**  Plaintiff's time worked was rounded up or down in 15-minute increments in 30-minute intervals.  **See E. Fernandez Tst. at Trial.**  There was no evidence presented that Plaintiff's time, when rounded, resulted over a period of time in the failure to compensate Plaintiff properly for all the time he actually worked, especially since Plaintiff was often paid based on a forty (40) hour week even though he typically worked fewer than forty (40) hours in a workweek, and since Plaintiff took a daily one (1) hour lunch break which Defendant Boss paid for. **See Plaintiff's Exhibit 29/DE 97-6; see Plaintiff's Exhibit 30/DE 97-7; see Plaintiff's Exhibit 2/DE 97-2; see Plaintiff's Exhibit 33/DE 97-8; see E. Fernandez Tst. at Trial; see Verastegui Tst. at Trial.**

<u>Plaintiff's Testimony about Hours worked is not credible</u>

Plaintiff alleged that he worked, on average, fifty-seven (57) hours per week in a given workweek. **See Chappel Tst. at Trial.**

Plaintiff itemized the hours that he contends he worked on a given workday in his amended answers to Defendant Boss' interrogatories. **See Defendants' Exhibit 42/DE 99-18 at pg. 19-40 of 123 (Plaintiff's answer to Interrogatory #4).**

Plaintiff testimony about his hours worked is not credible for a number of reasons:

i)   Plaintiff testified that he worked on national holidays, including Christmas Day, New Year's Day, Thanksgiving, and Independence Day, although Defendant Boss' stores are closed on those dates; **See Chappel Tst. at Trial; see Defendant E. Fernandez's Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 19-40 of 123.**

ii)  Plaintiff testified that he worked ten (10) hours per day, from 7:30am-5:30pm on most of those national holidays; **See Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 19-40 of 123.**

iii) Defendant Boss would hire its entry-level employees earning $8.50 per hour to walk and feed the dogs when the stores were closed, rather than hiring Plaintiff to do so when Plaintiff was earning $16-$20 per hour, and since the employees who walked and fed the dogs who were boarded with Defendant Boss on national holidays only worked a couple of hours and not the whole day. **See E. Fernandez Tst. at Trial.**

iv)  Plaintiff testified that he routinely worked until 5:30pm every work day, although Defendant Boss' stores closed by 5:00pm., and Ms. Verastegui

testified that she would come into the Sunrise store after Plaintiff and would take over from Plaintiff by 3:30pm.  **See. Chappel Tst. at Trial; See E. Fernandez Test at Trial; See Verastegui Tst. at Trial.**

v)      Plaintiff testified that he worked from 7:30am-5:30pm on many days between the end of September 2016 and the end of his employment with Defendant Boss on November 22, 2016, even though at the same time Plaintiff testified that he was also performing security work from 11pm-3am at another job, which would result in Plaintiff having only four and a half (4½) hours between jobs to sleep, eat and change; **See Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 19-21 of 123 (interrogatory #4), and pg. 45 of 123 (Plaintiff's answers to Interrogatory #19).**

vi)     Plaintiff testified that he did not eat during the workday while he worked for Defendant Boss, which is not credible given one of his 2nd jobs was physically demanding at YouFit gym.  **See Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 2 of 123.**

vii)    Plaintiff testified that he routinely worked on Tuesdays, although Tuesdays were typically his days off.  **See Chappel Tst. at Trial; see E. Fernandez Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 19-40 of 123 (Plaintiff's answers to interrogatory #4); see Plaintiff's Exhibit 49/DE 97-16 at pg. 73-74 of 152.**

viii)   Plaintiff identified people who he alleged had personal knowledge about the number of hours he worked, although Plaintiff did not have any of those

witnesses testify at trial or by deposition. **See Defendants' Exhibit 42/DE 99-18 at pg. 19 of 123 and 40 of 123 (Plaintiff's answer to interrogatory #3(vi) and #4(vi)).**

ix)     Plaintiff has no documentary evidence to support his contention that he worked on average fifty-seven (57) hours per week and only had his own self-serving testimony that he allegedly did so. **See Chappel Tst. at Trial.**

x)     Plaintiff admitted at trial that he is a convicted felon. **See Chappel Tst. at Trial; see Defendants' Exhibit 42/DE 99-18 at pg. 64-65 of 123 (Plaintiff's answer to interrogatory #19).**

<u>Plaintiff's screenshots are not reliable to show the hours he worked</u>

Plaintiff took computer screenshots with his cellphone. **See Chappel Tst. at Trial.**

The Court admitted the computer screenshots purely as photos and not for their accuracy as to the hours that Plaintiff worked. **See Trial Testimony; see Plaintiff's Exhibit 47/DE 97-15.**

The screenshot from July 24, 2013 shows that Plaintiff's 'Time In' to work was 7:29am and his 'Time Out' was 7:26am, and that the time in the 'Total' field was 23.95 hours for that workday, although Plaintiff admitted that he did not work 23.95 hours on July 24, 2013. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 55 of 115; see Chappel Tst. at Trial.**

The screenshot from December 23, 2015 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 34.12, although Plaintiff admitted he did not work 34.12 hours on December 23, 2015. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 32 of 115; see Chappel Tst. at Trial.**

The screenshot from December 3, 2015 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 104.4, although Plaintiff admitted he did not work 104.4 hours on December 3, 2015. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 32 of 115; see Chappel Tst. at Trial.**

The screenshot from April 2, 2015 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 3297, although Plaintiff admitted he did not work 3297 hours on April 2, 2015. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 44 of 115; see Chappel Tst. at Trial.**

The screenshot from March 6, 2015 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 6320, although Plaintiff admitted he did not work 6320 hours on March 6, 2015. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 45 of 115; see Chappel Tst. at Trial.**

The screenshot from January 28, 2015 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 10824, although Plaintiff admitted he did not work 10824 hours on January 28, 2015. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 47 of 115; see Chappel Tst. at Trial.**

The screenshot from September 5, 2013 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 1209, although Plaintiff admitted he did not work 1209 hours on September 5, 2013. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 54 of 115; see Chappel Tst. at Trial.**

The screenshot from June 7, 2013 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 321.9, although Plaintiff admitted he did not work 321.9

hours on June 7, 2013. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 56 of 115; see Chappel Tst. at Trial.**

The screenshot from June 6, 2013 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 345.5, although Plaintiff admitted he did not work 345.5 hours on June 6, 2013. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 56 of 115; see Chappel Tst. at Trial.**

The screenshot from June 5, 2013 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 3417, although Plaintiff admitted he did not work 3417 hours on June 5, 2013. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 56 of 115; see Chappel Tst. at Trial.**

The screenshot from December 12, 2014 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 103.98, although Plaintiff admitted he did not work 103.98 hours on December 12, 2014. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 57 of 115; see Chappel Tst. at Trial.**

The screenshot from July 17, 2014 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 1544.35, although Plaintiff admitted he did not work 1544.35 hours on July 17, 2014. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 63 of 115; see Chappel Tst. at Trial.**

The screenshot from March 26, 2014 shows that Plaintiff's total time worked for that work day, as reflected in the 'Total' field was 2024.27, although Plaintiff admitted he did not work 2024.27 hours on March 26, 2014. **See Plaintiff's Exhibit 47/DE 97-15 at pg. 66 of 115; see Chappel Tst. at Trial.**

For the foregoing reasons, Defendants are entitled to entry of a judgment in their favor on the unpaid overtime claim.

<u>Patricia Fernandez was not Plaintiff's Employer under the FLSA</u>

An employer under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §203(d).  Courts in the 11th Circuit evaluate the "economic reality of the relationship between the parties.  *Rodriguez v. Jones Boat Yard, Inc.*, 435 F. App'x 885, 888 (11th Cir. 2011)(quoting *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  Specifically, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Villarreal*, 113 F.3d at 205.

The evidence is that Defendant P. Fernandez spoke limited English and she testified via a Spanish-English translator at trial.  **See DE 93; see P. Fernandez Tst. at Trial.**  Plaintiff does not speak Spanish.  **See Chappel Tst. at Trial.**  Defendant P. Fernandez testified that she did not hire or fire employees.  **See P. Fernandez Tst. at Trial.** Defendants P. Fernandez and E. Fernandez testified that Plaintiff and Defendant P. Fernandez often worked in different stores and Plaintiff worked in the front of the store at reception, while P. Fernandez worked in the back of the store in a separate room in the grooming area.  **See P. Fernandez Tst. at Trial; see E. Fernandez Tst. at Trial.**  Moreover, both Defendant E. Fernandez and P. Fernandez testified that when Plaintiff and Defendant P. Fernandez were working together, Plaintiff would instruct Defendant P. Fernandez how customers wanted their dogs groomed and that P. Fernandez did not supervise Plaintiff's work schedule or conditions of employment.  **See P. Fernandez Tst. at Trial; see E. Fernandez Tst.**

**at Trial.** Defendant P. Fernandez did not determine Plaintiff's rate or method of payment. **See P. Fernandez Tst. at Trial.**

Accordingly, based on the foregoing factors and evidence presented, Defendant P. Fernandez was not Plaintiff's "employer" under the FLSA.

<u>Plaintiff's Claim for Retaliation</u>

To establish a prima facie case of retaliation under 29 U.S.C. § 215(a)(3), Plaintiff must demonstrate that (1) he engaged in activity protected under the act; (2) he suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action. *Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F.Supp.2d 1272, 1278 (S.D. Fla. 2006).

The evidence does not show that the first element was met. Although Plaintiff testified that he complained to Defendants about allegedly not receiving overtime pay, Plaintiff's testimony is self-serving and there are no other witnesses or documentary evidence to support Plaintiff's claim. **See Chappel Tst. at Trial.** Notwithstanding the two (2) years of text messages between Plaintiff and Defendant E. Fernandez, there was not one (1) occasion where Plaintiff complained to Defendant E. Fernandez in those text messages about not being paid overtime. **See Plaintiff's Exhibit 49/DE 97-16.** In fact, the evidence shows that Plaintiff thanked Defendant E. Fernandez for the vacation money which he received, and Plaintiff testified that the only text message which referred to overtime referred to another employee and not to him. **See Plaintiff's Exhibit 49/DE 97-16 at pg. 1 and 45 of 152.** The first factor therefore weighs in favor of the Defendants.

The evidence does not show that the second element was met either. The November 22, 2016 text messages from Defendant E. Fernandez to Plaintiff – the final day that Plaintiff worked

for Defendant Boss – refer to Plaintiff walking out and abandoning the store. **See Plaintiff's Exhibit 49/DE 97-16 at pg. 151 of 152.** The evidence shows that Plaintiff did not respond to these text messages or refute Defendant E. Fernandez's description of Plaintiff having walked out or abandoned the store. **See Chappel Tst. at Trial; see Plaintiff's Exhibit 49/DE 97-16 at pg. 151-152 of 152.** Plaintiff also admitted that Defendant P. Fernandez never said "you're fired" or words to that effect. **See Chappel Tst. at Trial.** The second factor therefore weighs in favor of the Defendants.

The evidence does not show that the third element was met either, in part since the evidence does not support the presence of the first or second elements, and in part from the lack of evidence supporting the third element itself.

For the foregoing reasons, Defendants are therefore entitled to entry of a judgment in their favor on the retaliation claim.

<u>Plaintiff's Claim for Late Payment of Wages</u>

An employer is entitled to select a pay date which is a reasonable period of time after the pay period. *Arroyave v. Rossi*, 296 Fed.Appx. 835, 837 (11th Cir. 2008) (holding that paying an employee ten (10) days after the end of the pay period is permissible under the FLSA). There is no requirement that the employer pay its employee by the end of the pay period. *Id*.

The evidence is that Defendant Boss paid its employees, including Plaintiff, on or before Saturday for the prior Monday-Saturday work week and that the stores were closed on Sundays. **See Chappel Tst. at Trial; see Plaintiff's Exhibit 2/DE 97-2; Plaintiff's Exhibit 30/DE 97-7; Plaintiff's Exhibit 33/DE 97-8; and Plaintiff's Exhibit 34/DE 97-9.** A pay date which is at most one week in arrears of the pay period does not violate the FLSA. The evidence did not support

Plaintiff's claim that Defendants "held" his paycheck or that he was not paid his wages on the pay date indicated on the paystub or paycheck.

Final Judgment

Based on the foregoing Findings of Fact and Conclusions of Law, and on the evidence presented at trial, and the Court being otherwise duly advised in the premises, the Court does hereby

ORDER AND ADJUDGE THAT

1)      Final Judgment on all counts of Plaintiff KENNIE LEE CHAPPEL, JR's Amended Complaint, is hereby entered in favor of the Defendants, BOSS RAIN FOREST PET RESORT, INC., d/b/a BOSS THE PET CONNECTION, ENRIQUE FERNANDEZ, and PATRICIA FERNANDEZ, and against Plaintiff, KENNIE LEE CHAPPEL, JR., such that Plaintiff, KENNIE LEE CHAPPEL, JR., shall take nothing in this action and Defendants shall go hence without day;

2)      The Court retains jurisdiction to rule on Defendants, BOSS RAIN FOREST PET RESORT, INC., d/b/a BOSS THE PET CONNECTION, ENRIQUE FERNANDEZ, and PATRICIA FERNANDEZ entitlement to recover their reasonable attorney's fees and costs, and to rule on the amounts thereof.

DONE AND ORDERED in Ft. Lauderdale, Broward County, Florida on this _____ days of _____, 2018.


_____
Laurana S. Snow
United States Magistrate Judge

Copies furnished to all counsel of record.

Dated: March 12, 2018                          SIMON & SIGALOS, LLP
                                               3839 N.W. Boca Raton Blvd., Suite 100
                                               Boca Raton, Florida 33431
                                               Telephone:  561-447-0017
                                               Facsimile:  561-447-0018

                                               *s/Damon E. Gasser*
                                               Michael W. Simon, Esq.
                                               Florida Bar No. 776394
                                               Primary email: msimon@simonsigalos.com
                                               Secondary email: msimon@3slaw.com
                                               Damon E. Gasser, Esq.
                                               Florida Bar No.: 0010394
                                               dgasser@simonsigalos.com (Primary)
                                               jlyon@simonsigalos.com (Secondary)


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on this 12 day of March, 2018 on all counsel or parties of record on the Service List Below.


*/s/ Damon E. Gasser*
Damon E. Gasser


## SERVICE LIST

Kennie Lee Chappell, Jr. v. Boss Rain Forest Pet Resort, Inc. *et. al.*

Case Number: 16-cv-62779-SNOW

Elliot Kozolchyk, Esquire
Email: ekoz@kozlawfirm.com
Koz Law, P.A.
320 S.E. 9th Street
Fort Lauderdale, Florida 33316
Telephone: (786) 924-9929
Facsimile: (786) 358-6071
Attorney for Plaintiff
Kennie Lee Chappell, Jr.