UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-62779-CIV-SNOW

KENNIE LEE CHAPPEL, JR.,

    Plaintiff

v.

BOSS RAIN FOREST PET RESORT, INC.,
d/b/a BOSS THE PET CONNECTION,
ENRIQUE FERNANDEZ and
PATRICIA FERNANDEZ,

    Defendants
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE is before the Court following a non-jury trial that was conducted on January 30-31 and February 6, 2018. In his Amended Complaint (ECF No. 24), the Plaintiff alleges that all three Defendants violated the Fair Labor Standards Act (FLSA) during the time period of November 24, 2013 through November 22, 2016, by denying him overtime wages and paying him late and by terminating in retaliation for his complaints about the FLSA violations. The Plaintiff seeks relief in the form of back and front pay, lost benefits and other remuneration, an additional equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b), equitable relief, damages for emotional distress, court costs and attorneys' fees.

In their Amended Answer (ECF No. 51), the Defendants have asserted fifteen affirmative defenses: (1) the Plaintiff is an exempt employee, pursuant to the FLSA's administrative or executive exemptions; (2) the Plaintiff was paid for all hours he worked; (3) the Plaintiff did not work in excess of 40 hours in any given workweek; (4) any overtime wages owed to the Plaintiff are *de*

*minimus*; (5) Defendants acted in good faith, precluding an award of liquidated damages; (6) any failure by the Defendants to pay any overtime wages was not willful, precluding an award of damages for more than 2 years; (7) the Plaintiff is estopped from asserting his overtime claims by his conduct in misleading the Defendants about the number of hours he allegedly worked, since the time sheets he completed did not demonstrate that he worked overtime; (8) the Defendants are entitled to set-off any amounts due Plaintiff against all sums improperly paid or overpaid, or which were otherwise paid to Plaintiff when he was not working, or for when he was abusing his position as store manager; (9) the Plaintiff is guilty of bad faith based on his misconduct on the job; (10) the Plaintiff is guilty of fraud because he has overstated his hours; (11) the Plaintiff has waived his right to seek unpaid overtime wages based on his misconduct; (12) the Plaintiff has failed to mitigate his damages because prior to filing suit, he did not advise the Defendants that he was allegedly working overtime or attempt to resolve his claims;[1] (13) the Defendants were justified in reducing Plaintiff's rate of pay and had a *bona fide* reason for doing so, based on his misconduct; (14) the Plaintiff cannot prove that Defendants knew that he worked overtime, and (15) the Defendants' business does not engage in interstate commerce, as required by the FLSA. At trial, the Defendants did not introduce evidence pertaining to affirmative defenses (1), (8), (9) and (11), and these defenses are deemed to have been abandoned.

The parties have stipulated that this Court has original federal question jurisdiction over the claims at issue; all parties are within this Court's jurisdiction; the Plaintiff is a former employee of the Defendants; the corporate Defendant, Boss Rainforest Pet Resort, Inc. ("Boss") is covered by the

---

[1] This defense relates to the amount of the attorneys' fee award in the event that the Plaintiff is the prevailing party.

2

FLSA and is an "employer" as that term is defined by the FLSA, and the Defendants never paid the Plaintiff the overtime rate of 1.5 times the regular hourly rate. (ECF No. 67 at 2) They also agree that the following issues of fact and law must be resolved: (1) Whether the Plaintiff worked more than 40 hours per workweek during one of more workweeks; (2) whether the Plaintiff is entitled to liquidated damages; (3) whether the Defendants failed to pay the Plaintiff his full and proper overtime wages; (4) whether the Defendants paid the Plaintiff late; (5) whether the Defendants retaliated against the Plaintiff; (6) whether the Defendants' violations of the FLSA, if any, were willful; (7) whether Defendant Enrique Fernandez is personally liable, and (8) whether Defendant Patricia Fernandez is personally liable. Id. at 2-3.

## I. FINDINGS OF FACT

1. The Plaintiff worked for Boss in various capacities beginning at the age of 15 or 16, during which time he was paid on an hourly basis and never was paid overtime. His hourly pay ranged from $16.00 to $20.00 per hour, making him one of the highest paid employees of Boss. The Plaintiff does not speak Spanish.

2. Defendant Enrique Fernandez is the founder and owner of Boss. He oversees all operations on a weekly basis, but does not visit each store every day. He supervised the Plaintiff and controlled his pay, duties and schedule.

3. Defendant Patricia Fernandez, the wife of Enrique Fernandez is not an owner of Boss and speaks very limited English. She was employed by Boss, primarily as a groomer. She did not supervise the Plaintiff and did not control his pay, duties or schedule.

4. Defendant Boss is a business that provides pet boarding and grooming services and sells pet supplies and accessories. Boss has three locations: 2603 N University Dr., Sunrise, Florida

("Sunrise store"); 11316 Wiles Rd., Coral Springs, Florida ("Wiles store"), and 7439 W Sample Rd., Corals Springs, Florida ("Sample store"). The three stores have a total gross income of more than $500,000. Boss stocks for sale some products that are produced outside the United States.

5. During the time period of November 2013 to November 2016, the hours of operation at the Sunrise store were Monday - Saturday, 7:30 a.m. to 5:00 p.m. The other two stores operated Monday - Saturday, 8:30 a.m. to 5:00 p.m. All three stores were closed on Sundays. After this lawsuit was filed, all three locations also were closed on Wednesdays.

6. The Plaintiff did not work on Tuesdays at the Sunrise store, but did work on some Tuesdays at the other stores. The Plaintiff maintains that he worked six days per week and never took a lunch break, while Enrique and Patricia Fernandez maintain that he worked five days per week. Susanna Berasdegui, the mother of Enrique Fernandez, was employed at Boss during the time the Plaintiff worked there, and maintains that the Plaintiff always took lunch breaks, often for much longer than the ½ hour breaks she took. Employees were not required to log in and out during lunch breaks.

7. The Plaintiff had two additional jobs during the relevant time period. One was at the YouFit Health Club, where he worked as a trainer four nights per week during 2015. The other job, which the Plaintiff held from September 2016 through the end of his employment in November 2016, involving work from 10:00 p.m. to 3:00 a.m. three nights per week.

8. Time records were kept by means of the computer software program "123 Pets." Each employee logged in and out with a password. The time records at each of the three locations were

separate and not linked.[2] Each Monday, a report of the hours worked during the preceding week by each employee was printed out and submitted to an outside payroll company, which was ACE during the period November 2014 to December 2015, and ADP from December 2015 through November 2016. However, the hours worked were not necessarily the hours for which an employee was paid. Enrique Fernandez submitted the final number of hours to the payroll company. Fractions of hours were rounded up or down pursuant to a formula. (Plaintiff's Ex. 10, 29, 81)

9. From September to November 2016, the Plaintiff took 115 photographs of computer screen shots which depicted time records pertaining to him for 621 days of work at the Sunrise store, which records had been maintained on the computer at that location. (Plaintiff's Ex. 47) In many instances, these photographs reflect different numbers of hours worked by the Plaintiff from the numbers of hours indicated on the records produced by the Defendants.

10. The photographs depict time records with a "comments" column, where times were rounded up or down, and where Enrique Fernandez indicated that hours were deducted from the Plaintiff's time owing to substandard performance. However, in many instances these deductions were not included in the time sheets submitted to the payroll company.

11. The two sets of time records pertaining to the Plaintiff that were produced by the Defendants differ from one another and, in some instances, from the hours reflected on the payroll checks issued to the Plaintiff. (Plaintiff's Ex. 2, 10, 29, 30, 33, 81)

12. According to the Plaintiff, the hours reflected in the photographs he took (Plaintiff's Ex. 47) are accurate insofar as they reflect the hours he worked at the Sunrise store, but do not reflect

---

[2] The Defendants produced in discovery only the time records for the Sunrise store and the Plaintiff did not request records from the other stores. As a result, no objective evidence was presented that the Plaintiff worked at any location other than Sunrise.

the hours he worked at the other two stores. The Plaintiff's computation of total hours worked is based on the times reflected in the Sunrise records: if those records showed that he arrived at Sunrise after 7:30 a.m., then he opened one of the other stores at 8:30 a.m., and if the records show him leaving the Sunrise location before 4:00 p.m., then he worked at one of the other stores until 5:30 p.m. Based on this computation method, the Plaintiff worked 17 overtime hours per week. Enrique Fernandez maintains that the Plaintiff never worked at two stores on the same day, in part because the stores are not close to one another and it would have been a waste of time for the Plaintiff to drive to more than one store on any given day.

13. Some of the hours reflected in the photographs taken by the Plaintiff are facially inaccurate, showing more than 24 hours worked in a single day. The facially inaccurate times range from 23.95 to 6320 hours per day.

14. Many of the Plaintiff's paychecks reflected a 40-hour workweek. On some occasions, the Sunrise records reflected less than 40 hours. According to the Plaintiff, this was because he was working at other locations. According to Defendant Hernandez, either the Plaintiff was working at another location, or he paid the Plaintiff for 40 hours because hoped the Plaintiff would be able to transition into a salaried position. The Plaintiff never was paid for more than 40 hours per week.

15. The ADP payroll records for 2016 (Plaintiff's Ex. 30) reflect that each paycheck was issued 5 days after the completion of the workweek. The ACE payroll records for 2014 (Plaintiff's Ex. 33) indicate pay dates on the last day of the workweek. The pay records for 2015 reflect paychecks issued 5 to 17 days from the last day of the workweek. According to the Plaintiff, he routinely received his paychecks 6 to 8 days from the date of issuance, and was paid late approximately 70% of the time.

16. On at least one occasion, the amount received by the Plaintiff was less than the amount reflected on the pay stub. On that occasion, a portion of a customer's veterinary bill was deducted from the Plaintiff's paycheck based on Enrique Fernandez' determination that the Plaintiff was responsible for the pet's injury.

17. The Plaintiff and Defendant Enrique Fernandez exchanged text messages during the time period of April 15, 2015 to November 22, 2016, the Plaintiff's last day of work. (Defendants' Ex. 11) The only mention of overtime in these messages was on April 20, 2015 and pertained to an employee other than the Plaintiff. Id. at Bates number PLA00616.

18. On November 22, 2016, Defendant Fernandez sent a text message to the Plaintiff at 9:38 a.m.:

> I hope you just didnt [sic] walk out on us and left patricia [sic] alone on a busy day like today! You better think twise [sic] because if you do leave today you are never coming back. So think very good before you abandone [sic] the shop today. Patricia is alone and she is going to be busy. Think hard.

Id. at PLA00767. The Plaintiff did not respond to this message.

19. Defendant Enrique Fernandez sent a second text message to the Plaintiff at 10:45 a.m. on the same date, stating:

> I need my keys Today specially sample one drop them because I need them for tonight.

Id. The Plaintiff also failed to respond to this message, but did return Enrique Fernandez' keys the following day.

20. The Plaintiff did not apply for unemployment benefits, but maintains that he was fired by Enrique Fernandez after an argument which included the Plaintiff's request for overtime. Enrique

and Patricia Fernandez maintain that Patricia Fernandez called Enrique Fernandez because the Plaintiff had left Patricia Fernandez alone in the store.

## II. CONCLUSIONS OF LAW

### A. Application of the FSLA

The FLSA guarantees overtime rates for employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). To satisfy the commerce test, the employer must have two or more employees, not including the owner or a member of the owner's immediate family, "engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce." 29 U.S.C. § 203(s)(1)(A)(i). The employer also must have annual gross volume of at least $500,000.00 in sales made or business done. 29 U.S.C. § 203(s)(1)(A)(ii).

An enterprise is defined as the "related activities performed, either through unified operation or common control, by any person or persons for a common business purpose." 29 U.S.C. § 203(r). The activities may occur at physically separate locations, by physically distinct entities, and can result in coverage of a group of establishments that do not satisfy the dollar volume requirement on an individual basis. Id. All employees of a covered enterprise are automatically covered regardless of their duties. 29 U.S.C. §§ 206, 207; Tony & Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 295, n. 8 (1985).

Enrique Fernandez testified that Boss sells merchandise manufactured outside the United States, that two or more of his employees handled that merchandise, and that Boss has gross revenues in excess of $500,000 per year. The Supreme Court has liberally construed the FLSA, "to

apply to the furthest reaches consistent with congressional direction." <u>Mitchell v. Lublin, McGaughy & Associates</u>, 358 U.S. 207, 211 (1959).  Accordingly, the Court concludes that at all times relevant to this case, Boss was an enterprise engaged in commerce and the Plaintiff was an employee covered by the FLSA.

## B. Employer Status

For purposes of the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." <u>Patel v. Wargo</u>, 803 F.2d 632, 637-38 (11th Cir. 1986) (internal quotation marks and citation omitted). The officer must, however, be involved in the day to day operation or have some direct responsibility for the supervision of the employee. <u>Id.</u> at 638. The test employed is the "economic realities test," focusing on whether the officer had the authority to hire and fire, supervise and control employee work schedules or conditions of employment, determine rate of pay and maintain employment records. <u>Villareal v. Woodham</u>, 113 F.3d 202, 205 (11th Cir. 1997).

Applying this test to the facts of the instant case, the Court concludes that Enrique Fernandez qualified as the Plaintiff's employer for FLSA purposes, but Patricia Fernandez did not. Ms. Fernandez was not an owner or officer of Boss, her English is very limited and the Plaintiff does not speak Spanish. The Court accepts the testimony of Enrique and Patricia Fernandez that she did not exercise operational control of Boss and rejects as not credible the Plaintiff's testimony to the contrary.

### C. Overtime

The FLSA provides, in 29 U.S.C. § 207(a)(1), that employees who are employed in an enterprise engaged in commerce must be paid one and one-half times their regular rate of pay for hours worked in excess of 40 hours in any given workweek. In order to prevail on a claim of unpaid overtime, an employee must demonstrate that (1) he or she worked overtime without compensation and (2) his or her employer knew of should have known of the overtime work. Allen v. Board of Public Education for Bibb County, 495 F.3d 1306, 1314-1315 (11th Cir. 2007). However, the employer has the duty "to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed" by an employee. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). When an employer keeps inaccurate or inadequate records, the employee's burden of proof is met

> if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

Id. at 687-688. If the employer fails to produce this evidence, "the court may then award damages to the employee, even though the result be only approximate." Id. at 688.

In the instant case, the Plaintiff has demonstrated that Boss' records during the relevant time period were inaccurate. The records produced by the Defendants in discovery (Plaintiff's Ex. 10, 29 and 81) are inconsistent with one another and with the payroll records. Thus, the Plaintiff must prove that he worked overtime and provide a basis for a reasonable estimate of the overtime hours

he performed.

The basis for the Plaintiff's claim that he worked overtime is his own testimony, supported only by the photographs of time records he found on the computer at the Sunrise store, which frequently show more hours than the corresponding time records produced by the Defendants. The Plaintiff's computation of total hours worked is based on the Sunrise records: if those records showed that he arrived at Sunrise after 7:30 a.m., then he opened one of the other stores at 8:30 a.m., and if the records show him leaving the Sunrise store before 4:00 p.m., then he worked at one of the other stores until 5:30 p.m. Based on this computation method, the Plaintiff worked 17 overtime hours per week. The Plaintiff called no witnesses besides himself and Enrique Fernandez, and produced no other evidence[3] that he worked more than 40 hours per week in any given week.

There are several problems with the Plaintiff's testimony. First and foremost, it is uncorroborated by anything other than the photographs taken of time records he photographed on the computer at the Sunrise store. The fact that those records, in many instances, showed a greater number of hours worked by the Plaintiff than the records produced by the Defendants does not mean that the Sunrise computer records are more accurate than any of those in the Defendants' production. The photographs depicted several facially inaccurate daily totals, ranging from 23.5 hours to 6320 on individual days. Moreover, the Plaintiff makes no mention of working overtime in any of the text

---

[3] The Plaintiff attempted to introduce into evidence multiple photographs of dogs that were taken by the Plaintiff on his Samsung cellular telephone, relying on the corresponding dates and times shown on the phone to prove that the Plaintiff was at one of the Boss stores on those dates and times. (Plaintiff's Ex. 45) The Court sustained the Defendants' objection to the photographs on the ground that the Plaintiff was not qualified to testify regarding the accuracy of the date and time information generated by the phone. Even if admissible, the photographs would be only marginally relevant because the Plaintiff possessed keys to the Boss stores, and the fact that he was at the store would not prove that he was working at the time the photographs were taken.

messages he exchanged with Enrique Fernandez during the last 19 months of his employment at Boss.

In addition, the Plaintiff's credibility is undermined by his testimony that every time he clocked in late or left early from the Sunrise store, he was working at another Boss store. This testimony was contradicted by Enrique Fernandez, who stated that the Plaintiff never worked at more than one store on any given day. The Court concludes that Enrique Fernandez' testimony is more credible, since the Plaintiff offered no explanation for why the other stores could not be opened or closed by the employees who were working at those stores, especially since the stores were some distance apart and it was inefficient for him to drive between the stores. Also, it is unlikely that the Plaintiff worked at Boss 57 hours per week in 2015 or the latter part of 2016, when the Plaintiff was holding down second jobs in the evenings.

Based on the conflicting evidence produced by the parties, it is *possible* that the Plaintiff worked overtime during some weeks, but it is equally possible that during many weeks he was paid for a greater number of hours than he actually worked. The Court does not condone Boss' haphazard and legally insufficient record keeping practices, and acknowledges that the absence of adequate time records results in a relaxed standard of proof pertaining to the *number* of overtime hours worked by the Plaintiff. Anderson, 328 U.S. at 688. Nevertheless, it remains the Plaintiff's burden to prove that he worked more than 40 hours per week on one or more occasions. Id. The Court concludes that the Plaintiff has not met his burden of proving that he worked overtime in any week during the relevant time period, and his overtime claim must fail.

### D. Late Pay

The FLSA does not specify when payment of wages must be made, but there is some

authority for the proposition that an employee may be entitled to liquidated damages if he or she did not receive wages or overtime on the regular payment date. Atlantic Co. v. Brighton, 146 F.2d 480, 482 (5th Cir. 1944). In Arroyave v. Rossi, 296 Fed.Appx. 835, 837 (11th Cir. 2008), the Eleventh Circuit held that for damages to be awarded, the wages or overtime must be "unreasonably late during the relevant period," and that 10 days from the end of the pay period was not unreasonable. See, also, Benavides v. Miami Atlanta Airfreight, 322 Fed.Appx. 746 (11th Cir. 2009) (7 or 8 days payment in arrears not actionably unreasonable or untimely); Del Rsario v. Labor Ready Southeast, Inc., 124 F.Supp. 3d 1300, 1314-1316 (S.D.Fla. 2015) (6 or 8 days late not unreasonable).

In the instant case, the Plaintiff testified that he routinely received his paychecks 6 to 8 days from the date of issuance, and was paid late approximately 70% of the time. The only objective evidence to support this claim were the pay records for 2015, which reflect paychecks issued 5 to 17 days from the last day of the workweek. No complaints of late payment are contained in any of the Plaintiff's text messages to Enrique Fernandez.

As the Plaintiff has cited no cases holding that the payment practice he has described is actionable under the FLSA, he cannot prevail on a claim of late pay. Arroyave, 296 Fed.Appx. at 837.

### E. Retaliation

In 29 U.S.C. § 215(a)(3), the FLSA prohibits firing an employee who has filed a complaint or has instituted or caused to be instituted any proceeding, or has testified or is about to testify in any such proceeding. The Eleventh Circuit has extended the protection to unofficial complaints about unequal pay expressed by employees to their employer. EEOC v. White & Son Enterprises, 881 F.2d 1006, 1011 (11th Cir. 1989).

The Plaintiff here testified that he was fired after an altercation with Patricia and Enrique Fernandez which included his complaint about unpaid overtime. Patricia and Enrique Fernandez testified that the Plaintiff was fired because he left Patricia Fernandez alone in the store and failed to return after Enrique Fernandez offered him the opportunity to do so. The Fernandez' version is supported by the text message exchange between the Plaintiff and Enrique Fernandez on November 22, 2016, and the Court credits their version over that of the Plaintiff. Accordingly, the Plaintiff has failed to establish his claim of retaliation.

### F. Liquidated Damages

An FLSA plaintiff is entitled to liquidated damages in an amount equal to the amount of unpaid minimum wages and/or overtime compensation, an award which is mandatory unless the defendant acted in good faith and had reasonable grounds for believing that his act or omission was in violation of the statute. 29 U.S.C. § 216(b); Lorillard v. Pons, 434 U.S. 575, 582 n. 8 (1978). If the employer acted in good faith, the court has discretion to reduce or eliminate the liquidated damages award. 29 U.S.C. § 260. In addition, an employee may be entitled to liquidated damages if he or she did not receive wages or overtime on the regular payment date. Atlantic Co. v. Brighton, 146 F.2d 480, 482 (5th Cir. 1944); Arroyave v. Rossi, 296 Fed.Appx. 835, 837 (11th Cir. 2008).

In the case *sub judice*, the Plaintiff has failed to prove any of his FLSA claims, and therefore is not entitled to liquidated damages.

Based on these Findings of Fact and Conclusions of Law, Judgment in favor of the

Defendants on all claims shall be entered by separate order.

DONE and ORDERED at Fort Lauderdale, Florida this 15th day of March, 2018.

                                                                                    _____
                                                                                    LURANA S. SNOW
                                                                                    UNITED STATES MAGISTRATE JUDGE

Copies to: All counsel of record